## BAHAM v. F. W. WOOLWORTH & CO. et al. *
### No. 1627.

Court of Appeal of Louisiana. First Circuit.

Oct. 7, 1936.

*For opinion on rehearing, see 170 So. 507.

J. Elton Huckaby, of Baton Rouge, for appellants.

W. A. Benton, of Baton Rouge, for appellee.

DORE, Judge.

The plaintiff sues to recover damages for an alleged injury to her right foot, which she claims to have sustained on May 5, 1934, in the store of the defendant company while purchasing a hat. She avers that while she was standing in one of the aisles of the store looking at a hat, the assistant manager carelessly and negligently dropped or let fall a roll of screen wire on her right foot causing a contusion of the foot and third toe and a severe sprain. She asks for damages in the sum of $2,526.

Defendant denied that plaintiff was struck and injured by a roll of wire while in its store on the date alleged in the petition, but alleged that on April 28, 1934, while plaintiff was in its store, one of the clerks was measuring off some screen wire when the roll of wire began to unroll down the aisle toward the point where plaintiff was standing, but that another clerk stopped the wire before it struck plaintiff. The defendant denied that plaintiff suffered any injury, but pleaded in the alternative that if she had suffered any injury her claim was prescribed as more than one year had elapsed from April 28, 1934, to the date of filing the suit on May 1, 1935. The Travelers Insurance Company was joined in the suit as the insurer of defendant against public liability and this defendant made the same defense as the Woolworth Company.

Judgment was rendered against both defendants in solido for the sum of $513 from which judgment both defendants appeal.

Plea of Prescription.

Plaintiff claims that the accident and injury occurred on May 5, 1934, while defendants claim that if any accident occurred it was on April 28, 1934, and consequently any claim arising therefrom was prescribed (Civ.Code, art. 3536) when the suit was filed on May 1, 1935.

Plaintiff testified that she came down town on May 5, 1934, and first went to the office of the waterworks company and paid a bill. She files in evidence a receipt by that company dated May 5th. Ella Walker, a colored woman who assisted plaintiff in boarding a street car and getting home after the injury, testified that it was on May 5th. She fixes the date from the fact that on the following day, Sunday May 6th, a society of which she was a member had its annual anniversary sermon, which occasion was always in May. Edward York, a colored man who witnessed the accident, testified that it was on May 5th. He was able to fix the date from the fact that his wife's birthday came on that day, and he had gone to town to make some purchases in connection with that event. Nicholas Baham, a cousin of plaintiff's husband, says that it was on May 5th that plaintiff was hurt. He attended a baseball game and returned to plaintiff's home where he was staying at about 3:30 in the afternoon and went to sleep. When he awoke about 7:30, he found plaintiff sitting on the bed complaining about her foot. Dr. Brown, who treated plaintiff for the injured foot, says his first treatment was on May 5th. His first charge for services was on May 5th. While this doctor testified that the injury to plaintiff's foot could have occurred several days before he treated her on May 5th, yet his whole testimony is to the effect that the injury was a recent one. There is nothing in his testimony on this point that conflicts with the testimony of plaintiff and her other witnesses.

Mr. Jules J. Maitre, Jr., the assistant manager of the store, testified that the incident out of which the action arises took place on April 28, 1934. He bases his testimony on the date from a memorandum which he claims to have made of the accident just after it occurred, and which memorandum he gave to the manager. Miss Julia Kleinpeter, a clerk in the store fixes the date as April 28th, for the reason that

her uncle died on April 26th and was buried on April 27th and she went to work the following Saturday April 28th.

The district judge, who heard the witnesses and evidently knew some of them, reached the conclusion that the accident happened on May 5, 1934, and overruled the plea of prescription. There is no manifest error in this finding of facts, and his ruling was correct.

### Merits.

The testimony as to how the accident happened is very conflicting. Plaintiff says that while she was standing in an aisle in the store looking at a hat, Mr. Maitre, the assistant manager, came down the aisle with a roll of screen wire in his arms; on passing her he dropped the wire which fell on her right foot, whereupon she exclaimed, "you hurt my foot." She reached down and caught her foot and held it up. After a few more words between them during which time she secured his name and he secured hers, she left the store, limping on her foot. She met Ella Walker on the street, who assisted her in getting home and getting the doctor.

Plaintiff is corroborated in her statement as to the accident by Edward York, a colored man who was in the store at the time and saw the occurrence. His testimony is practically the same as that of plaintiff. Ella Walker met plaintiff on the street after she came out of the store and assisted plaintiff in getting on the street car to go home.

Two witnesses testified for defendants as to the way the accident took place, Mr. Maitre, the assistant manager, and Miss Kleinpeter, the clerk who was waiting on plaintiff at the time. Their testimony flatly contradicts plaintiff and York as to what happened. Maitre testified that he walked back in the store where a clerk, a Miss Eddy, had a roll of screen wire on the floor in the act of measuring off some of the wire for a customer, a Mr. Henry Wilson; that the wire started rolling down the aisle toward where plaintiff was standing at the millinery counter and he then attempted to catch the wire and hollered "watch out," whereupon Miss Kleinpeter stepped in front of the wire and stopped it with her foot. He denies that the wire struck plaintiff at all. He does say, however, that she became peeved and asked him to apologize to her, which he refused to do; that she asked him for his name,

which he gave her, and he in turn secured her name, after which she left the store limping on her foot. He followed her out on the street and watched her for a short time; that she looked around and did not see him in the crowd and then began to walk as straight as ever. He says that the wire rolled about 30 feet before being stopped by Miss Kleinpeter. No one gave the wire a push; it just rolled itself. He says that he was about 35 feet from plaintiff when the wire was stopped by Miss Kleinpeter; that he went over to where plaintiff and Miss Kleinpeter were standing to see if any one was hurt; that plaintiff said to him that he did not apologize to her for the wire hitting her; that she then got his name and he got her name and she left the store. He further states that the wire was about 10 feet ahead of him when it was rolling down the aisle toward plaintiff.

Miss Kleinpeter corroborates Maitre in some parts of his testimony, but contradicts him in many other parts. She says that Maitre was measuring off the wire for a customer when it started rolling, he said another clerk was measuring the wire; she says that the wire rolled about 3 yards, he said it rolled about 35 feet; she said the wire was rolling up, he said it was unrolling; he said that he was 10 feet behind the clerk when the wire started rolling, Miss Kleinpeter said he was stooping, measuring or helping measure the wire when it began rolling.

Neither the clerk nor the customer involved in the sale and purchase of the wire were called as witnesses, yet Maitre knew both their names and addresses, and no explanation was offered for their absence.

There can be no doubt that plaintiff did receive an injury to her foot that day somewhere because Dr. Brown treated her foot on that day.

The district judge was in better position to weigh the testimony than we are. He must have believed that plaintiff received an injury in the store of the Woolworth Company as she claims. There is certainly no manifest error in his finding of fact.

The lower court allowed plaintiff $513 as damages. We believe the same to be adequate under the circumstances.

Judgment of the lower court is hereby affirmed.